PAGE MACH. CO. v. DOW, JONES & CO.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

No. 238.

PATENTS ☞328—INFRINGEMENT—PRINTING TELEGRAPH RECEIVER.

The Joy patent, No. 780,664, for a printing telegraph receiver, claim 12, which is for one feature only of a complicated machine, construed, and *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Page Machine Company against Dow, Jones & Co. Decree for complainant (230 Fed. 164), and defendant appeals. Reversed.

See, also, 200 Fed. 72, 74.

This is an appeal from a decree of the District Court, entered on December 21, 1915, awarding an injunction for the infringement of letters patent 780,664, issued to John M. Joy on January 24, 1905. The invention relates to a printing telegraph receiver of the class known as "Page printers," and the chief object of the invention was to increase the rate of speed at which such receiver might be worked with a minimum of power; but it had as subsidiary objects to improve the machine in various details of operation and organization, one of which is in question here. The patent was not the first in the art, which goes back to 1878, G. L. Anders, 210,895. Other machines of the same general character are shown in the two Wright patents, 460,328 (1891) and 466,858 (1892).

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The first efforts of this patentee were in conjunction with one B. F. Merritt and are shown in Merritt & Joy, 558,506 (1896), which contains a device for the feeding of the paper to make successive lines, which is relevant here. The printing is done by a wheel containing all the letters and numbers, which revolves along with a shaft on which it is fixed, until the proper letter is opposite the paper. After the printing of one letter the type wheel carriage must move to the right to make a letter space, when in its new position it is turned on its own axis to the next letter, and so proceeds to the end of the line at the right. After it reaches the end of the line it must be retracted to the extreme left again, and at or after its retraction the paper must be fed one line. In Merritt & Joy's patent the feeding of the line, which is the feature here in question, was accomplished by the impact of the type wheel carriage as it moved from right to left under the influence of a retracting spring, the energy in which was stored up by the motion of the type wheel carriage itself. The paper feed in this patent did not directly obtain any energy from the shaft which moved the carriage to the right and rotated the wheel to the proper point for printing, but in the patent in suit the paper feed was energized directly by the same shaft which drove the type wheel to the right and rotated it. This was the source of the claim in question, which was No. 12 of the patent, and read as follows: "In a printing telegraph receiver the combination of a type wheel, paper feeding mechanism, a constantly acting source of power, and means for continuously feeding the paper without feeding the type wheel as long as said source is supplying power, for substantially the purposes set forth." This claim had once been in suit between the parties, and was held invalid by the Circuit Court. 166 Fed. 479.

Thereupon the plaintiff filed a disclaimer of claim 12 as follows: "As to claim 12 for a constantly acting source of power in the combination of element therein contained excepting a constantly rotating drive shaft." Thereupon the plaintiff in the suit mentioned filed a supplemental bill, and the court held that claim 12, as modified by the disclaimer, was valid and infringed. (C. C.) 200 Fed. 72. Thereafter the defendant changed its machine, and on contempt proceedings the second machine was held to violate claim 12. (D. C.) 200 Fed. 74. Finally, the defendant changed its machine a second time, and this suit was brought in the District Court, which held the machine so changed for a second time to be also within claim 12. It is this decree which is now here upon appeal.

The defendant's machine is of the same general character as the plaintiff's. It will be necessary only to consider the machine now in question and that known in the case as the "contempt" machine. In the "contempt" machine, through the interposition of a relay battery, it was possible to feed the paper space while the type carriage remained stationary at the extreme left of the line. This was accomplished by repeatedly making and breaking the electric current which actuated a magnet the armature of which in turn operated the feed mechanism. The Circuit Court held that this constituted a means for continuously feeding the paper without feeding the type wheel as long as said source is supplying power. In the present machine the paper feed is operated by a battery, but the current is made and broken only by the movement of the type wheel carriage.

The defendant claims that it has adopted the earlier disclosure of the Merritt & Joy patent, combining therewith the relay battery shown in the patent of Essick, 531,677, in which when the type wheel carriage is retracted to the extreme left it closes a contact which operates the paper feed for one line. The carriage must then be moved one space to the right to open the contact and prepare the paper feed for another space, and finally it must be retracted a second time to the left again to close the contact. In Essick, therefore, it is necessary that the wheel carriage shall continuously oscillate through small distances to the right and then to the left in order to feed the paper successive lines, but the energy which actuates the paper feed is not the source of power which actuates the type wheel carriage unless within the term "actuates" is included the mere opening and closing of the circuit. The details of the structure are not necessary to state more fully.

Gifford & Bull, of New York City (J. Edgar Bull and Charles S. Jones, both of New York City, of counsel), for appellee.

Newell & Neal, of New York City (Frederick P. Fish and Emerson R. Newell, both of New York City, of counsel), for appellant.

Before COXE and WARD, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). In this case we do not think it necessary to take up the question of validity at all, since we are satisfied that the claim should not receive a broad interpretation, because it is for only one feature of a highly complicated and detailed machine coming into a closely settled art, and the invention must be therefore confined to the disclosure. The issue of infringement turns on the interpretation of the words, "for continuously feeding the paper without feeding the type wheel." We pass the validity of the disclaimer, assuming for argument's sake, that the phrase, "constantly acting source of power," is to be read, "a constantly rotating drive shaft." The words in question ought to be interpreted by the specifications as far as these throw any light, and they not only throw light, but absolutely define and control these words as used in the claim. On page 3, lines 81–100, the patentee speaks of a mechanism for shifting the operating clutch, which is lettered $C$ on the drawings, and to understand which perhaps the best figure for practical purposes is Figure 2, although the section drawing in Figure 9 also illustrates it. He then says that, before describing the present mechanism for shifting this operating clutch and its operation, he "will state generally that according to my invention means are provided for continuously feeding the paper without feeding the type wheel, and to be more particular the means for accomplishing this end are connected with the mechanism for shifting the operating clutch $C$." This mechanism is clearly that referred to in claim 12. The description of the operation of the line-spacing mechanism begins at page 5, line 130, and ends at page 6, line 88. It describes how the lever, *113*, rocks idly so long as the pins, *121* and *126*, are not in abutment. It is during this period that the carriage of the type wheel is being advanced to the right with every oscillation of the escapement lever, *93*, actuated by the magnet, *99*, through its proper key, a device clearly shown in Figure 1. The description of how the type wheel is retracted and a single line of paper is fed begins on page 6, line 18, and ends on the same page at line 74. The important part of this specification for our present purposes is lines 74–88 on page 6, which are as follows:

"It will now be seen that after the operating clutch *C* has been shifted in such manner that the type wheel mover shaft *8* retracts the type wheel *7* against the buffer *72* by continuing to successively actuate the armature *97*, causing the rotation of the escapement wheel *70* tooth by tooth, the paper may be fed line by line without feeding the type wheel, *7*; forward, for with the type wheel mover resting against buffer *72*, as long as the stop *126* on shaft *6* is maintained in such position that finger *121* will hit against it whenever the lever *113* is actuated, rotation of the type wheel mover shaft in either direction cannot take place."

It is quite clear from this description what the patentee meant. By a continual feed of paper he meant that the operator should be able to make successive blank lines without moving the type wheel in any degree whatever, and it is also clear that he supposed he had solved this. He presupposed that the pins, *121, 126,* should remain in abutment by pressing the proper key operating the type-wheel shaft, *6.* While they so remain, any energizing of the poles, *99,* allows one tooth of the escape wheel, *70,* to be released, this causes the cam, *65,* to rock the lever, *113,* upon the pin, *126,* as a fulcrum and necessarily to move the lever, *110,* which acts as an escapement for the paper mechanism. Now the member, *60,* of the clutch, slips freely on the shaft (page 2, lines 74, 75), and the gears, *64, 66,* therefore rotate the worm shaft, *8,* only by virtue of the clutch, *57.* Indeed, the only member of the clutch *C* rigidly attached to the shaft, *8,* is the bracket, *58,* which is adjustably connected with the shaft by a set screw, *59,* Figure 9. If the clutch *57* were a friction clutch, then when the pin, *105,* began to push away the member, *57,* of the clutch, as it would do at once upon the beginning of the action of the cam, *65,* it would at once release that clutch and make the member, *60,* turn idly upon the shaft, *8.* Such a clutch would therefore certainly enable the line-spacing mechanism to operate without the most minute angle of rotation of the shaft, *8.* In the design in question, while it may be debatable whether the operation of the pin, *105,* to disengage the clutch, *57, 60,* will be quick enough to avoid a minute angle of revolution of the shaft, *8,* which would carry the type wheel carriage a minute distance away from the buffer, *72,* to be returned as soon as the clutch, *52, 56,* engaged and retracted it, it is clear that the patentee thought it would, because the language quoted is explicit and clearly indicates that the clutch, *57, 60,* will disengage too quickly to move the type wheel carriage at all. No other meaning can be attributed to the phrase, "rotation of the type wheel mover shaft in either direction cannot take place," page 7, lines 86–88. As this is the operation referred to by the words in claim 12, "for continually feeding the paper without feeding the type wheel," it is irrelevant whether in practice the type wheel carriage is in fact moved a step or two to the right to avoid "skating through." This was the patent, and if the patentee has now learned that for "unison" he must abandon rigid adherence to this feature, he can surely make no monopoly out of his inability to foretell the exact results of his invention and out of his subsequent practice.

Turning now to the defendant's device, we find quite a different organization. As long as the point, *32,* remains in contact at the point, *33,* the circuit is made and energizes the magnet, *26,* which will hold down the armature, and allow only one tooth of the escapement to feed the paper. Another space cannot be made without moving the type carriage to the right far enough to break the circuit at *32, 33,* de-energize the magnet, and release the armature. It is functionally necessary, therefore, to oscillate the type carriage in order to give a continuous line spacing, and that is directly the contrary of the claim in suit. This was not true in the so-called "contempt" machine, because, when the pins, *121, 126,* were in abutment, any operation of

the cam, *65,* would continue to make successive contacts at the point, *200a,* after the type wheel carriage had been retracted to its step by the first raising of the bar, *24.* No oscillation of the wheel carriage was necessary for continuous line spacing. The operation of the defendant's two machines in this respect was therefore diametrically opposed.

The defendant derives directly from Merritt & Joy and Essick and has borrowed nothing from the patent in suit so far as concerns claim 12. In both these patents it is absolutely necessary for the type wheel carriage to move to the right for a continuous line spacing; either by the momentum of the type wheel carriage, or by its closing of a circuit to operate the paper feed, the return, and only the return, can feed the paper. It is true that in Merritt & Joy the momentum of the type wheel carriage furnishes the sole energy for this purpose, a momentum imparted to it by the retracting spring in which some of the energy of the constantly driven shaft has been stored. It was probably in order to differentiate the patent in suit from his patent, that the patentee provided that the type wheel carriage should not move to the right. But in Essick the paper feed not only required a movement of the type wheel carriage, but also was actuated by a completely independent source of energy, a battery, and the only energy used from the source which supplied the type wheel carriage was to close the contact. It is an abuse of words to speak of the closing of those contacts as though it drove the paper feed. However, we may pass by that, because the defendant's machine, and so Essick's, which he has borrowed, can operate only by a movement of the type wheel carriage, quite as much as Merritt & Joy, and that for present purposes is a crucial distinction. This movement is not a mere accidental concomitant, associated for other reasons, as is the movement of the type wheel carriage in actual practice in the patent in suit; it is a functional necessity, the condition of any operation whatever of the paper feed, the direct opposite of the theory upon which that patent was planned. It makes no difference whether the designer of the defendant's machine was deliberately trying to circumvent the patent; whatever his purpose, he had open to him the materials of the art, and so long as he took no suggestion from the patent in suit he did not invade its monopoly.

The decree is reversed, and the complaint dismissed, with costs in both courts.